## Osgood & a. v. Concord Railroad.

If a railroad charges and receives, for transporting a car-load of merchandise to the station on its road where it delivers the goods and they are accepted by the consignee, more than it charges for transporting the same a greater distance, it is liable to the penalty imposed by c. 55, Laws of 1879, although by the original contract the merchandise was to be transported to a more distant station.

Debt, for a penalty alleged to have been incurred by the defendants June 20, 1881, under c. 55, Laws of 1879, by charging a greater sum for transporting a car-load of corn from Concord to Suncook than was charged for transporting the same *from Concord to Hooksett, a greater distance. Facts found by the court.

June 20, 1881, the defendants owned and operated a railroad from Concord to Nashua, located on the west bank of Merrimack river, between Concord and Hooksett. They also operated a railroad on the east side of the river between Concord and Hooksett, having a station at Suncook for the delivery of freight. On that day they hauled from Concord to Suncook, and delivered to the plaintiffs, a car-load of corn bought by the plaintiffs through Barron & Co., of Concord, in Ogdensburg, N. Y., and forwarded over several other roads to Concord, where the defendants received it. The roads between Ogdensburg and Boston, the defendants' being one, formed a continuous line for the transportation of merchandise to billing points on the line, called the "National Dispatch Line," having a common agent at Ogdensburg, with authority from each road to make contracts for the transportation of merchandise from Ogdensburg to the several billing stations on the whole line,

and to fix the rate therefor to be divided between the roads doing the service; also with authority to fix or establish billing stations on the line. In 1881 Hooksett was, and Suncook was not, a billing point on the defendants' road for grain forwarded from Ogdensburg by this through line. Hooksett was made a billing point by the agent who represented the whole line from Ogdensburg to Boston, and the rate for transportation from Ogdensburg to Hooksett was fixed by him. Full car-loads of corn were forwarded from Ogdensburg through to billing points only on the line. When these trains reached Concord, cars for billing stations on the defendants' road were detached and forwarded by a way train *via* Suncook, while the through trains were forwarded by the main line on the west side of the river. The agent of the Dispatch Line at Ogdensburg refused to bill cars to Suncook, and a person having grain to be forwarded from Ogdensburg to Suncook was compelled to accept a contract for delivery at Concord or Hooksett. The distance from Concord to Hooksett *via* Suncook is nine and a half miles, and about the same over the main line. The distance from Concord to Suncook is seven miles. In June, 1881, the tariff on corn was four cents per 100 lbs. from Concord to Suncook and the same from Concord to Hooksett, and from Hooksett to Suncook two cents per 100 lbs.

The car in question was detached from the through train at Concord, and forwarded by the way freight train to Suncook, where it was left, and was not taken to Hooksett at all.

The charges for the carriage of the corn from Ogdensburg to Hooksett were $32.35, as fixed by the common agent of all the roads, which sum included the defendants' share for the carriage of the corn from Concord to Hooksett. The freight bill forwarded from Hooksett to Suncook contained a charge of $5.60 for transportation of the same car-load of corn from Hooksett to Suncook, and $32.25 charged as expense, making a total of $37.95 charged for the transportation of the car-load of corn from Ogdensburg to Suncook, which sum the plaintiffs were required to pay and did pay to the defendants' station-agent at Suncook. The charge was the same that the plaintiffs would have been required to pay, according to the tariff rates, if the corn had been carried to Hooksett (to which place it was billed), and had then been forwarded to Suncook. The court held upon the foregoing facts that the plaintiffs were entitled to recover, and the defendants excepted.

*Chase & Streeter*, for the defendants. The case shows three distinct and independent contracts, all of which must be considered.

1. A contract between the plaintiffs and Barron & Co. to deliver the car of corn at Hooksett free of expense to the plaintiffs.

2. A contract between Barron & Co. and the National Dispatch Line (of which the defendants are a part) for the carriage of the corn from Ogdensburg to Hooksett.

3. A contract between the plaintiffs and the defendants to deliver the same car to the plaintiffs at Suncook.

The plaintiffs bought the car-load of corn, upon which the question is raised, of Barron & Co., and the contract made by them—not with the defendants, but with Barron & Co.—expressly provided that Barron & Co. should deliver said corn at Hooksett free of expense to the plaintiffs.   With this contract the defendants had nothing to do.   They were not parties to it, and it does not appear that they were consulted about it.

According to their contract with the plaintiffs, Barron & Co. employed the defendants to haul said car to Hooksett, to be there delivered to the plaintiffs; and at the request of Barron & Co. said car was billed to Hooksett, a greater distance from the original point of departure than Suncook, where the plaintiffs were finally to receive it.   The plaintiffs' contract with the defendants was, that the defendants should deliver to them at Suncook the same car which they had already contracted with Barron & Co. should be delivered free of expense to them at Hooksett.

If they had chosen to order the car billed to Boston, at the same time understanding that it was finally to be left at Suncook, the defendants or their agents would have been bound to so bill it, and at the same time would be entitled to collect their usual tariff rates for the distance contracted for, and that too, we submit, without being mulcted by a penalty of $500 for making and acting upon a contract which they could not legally refuse to make and act upon.

The substance of the contracts taken together was, that the car should be hauled from Ogdensburg to Suncook by an agreed route of two hundred and twelve miles, at the usual tariff rate.   If, after the contracts were thus made, necessity or the pleasure of the defendants had caused them to haul said car *via* Bellows Falls, Keene, Fitchburg, and thence to Hooksett and Suncook, it could not have compelled the plaintiffs to pay more than the contract rate by the contract route.   And, on the other hand, if the company did haul the car by a more direct route than the one agreed upon, the plaintiffs were not thereby injured or " aggrieved."

*Copeland & Jones*, for the plaintiffs.

CARPENTER, J.   The statute provides that "no railroad owned or operated in this state shall charge a higher tariff on like classes of freight by the car-load when delivered at any station on its line than is charged to deliver the same at any station on the road where the transportation is for a greater distance," or, more briefly expressed, no railroad shall charge more for transporting freight by the car-load any distance than it charges for transporting the same a greater distance, and imposes a fine for violating its provisions, to be recovered in an action of debt.   Laws of 1879, *c.*

18*

55. This, excluding the provision for a penalty, is substantially a reënactment of the common law. *McDuffee* v. *Railroad*, 52 N. H. 430, 457; *Railroad* v. *Forsaith*, 59 N. H. 122. The railroad on the west bank of the river to Hooksett, and the railroad to Hooksett by way of Suncook, are both operated by the defendants, and for the purposes of this question are to be treated as parts of the same road. G. L., c. 159, s. 1; *Pierce* v. *Concord Railroad*, 51 N. H. 590. The distance from Concord to Suncook is seven miles, and to Hooksett nine and one half miles. The defendants charged for transporting the car-load of corn from Ogdensburg to Hooksett $32.35, and to Suncook $37.95. Whatever part of the whole sum charged was appropriated for the freight over other roads, the defendants charged and received, for transporting the car-load upon their own road from Concord to Suncook, $5.60 more than they charged for transporting the same the greater distance from Concord to Hooksett. A more striking instance of the mischief the statute was intended to remedy could hardly be presented. The defendants were not a party to and have no concern with the agreement of the vendors to deliver the corn to the plaintiffs free of expense at Hooksett. Their own contract to transport the corn to Hooksett does not relieve them from liability. If they had performed that contract and insisted upon the plaintiffs' taking a delivery of the corn at Hooksett, it may be that there would have been no just ground of complaint. But they did not do so. By their transportation of the corn to Suncook, and the plaintiffs' acceptance of it there instead of at Hooksett, the original contract was abandoned, and in its place a new one to haul it to Suncook was substituted, under which the service was rendered and the right to freight accrued. The defendants cannot treat the contract as rescinded so far as it relates to the service to be rendered, and in force for the purpose of measuring their compensation. Whether, upon a contract to haul a car-load of merchandise from Concord to Suncook by way of Hooksett, the defendants can or cannot under the statute properly charge a greater sum than their rate to Hooksett, either in case they literally perform the contract or in case they in fact haul it by the direct and shorter route to Suncook, are questions which need not be determined, because the case shows no such contract.

In *Commonwealth* v. *Worcester & Nashua Railroad*, 124 Mass. 561, the question arose upon demurrer, and the declaration did not show that the defendants charged or received a greater sum than the statute allowed. The ruling in regard to the statute of limitations was correct.

*Exceptions overruled.*

SMITH, J., did not sit: the others concurred.